No. 11-16401

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**TERESA SHEEHAN,**

Plaintiff - Appellant,

vs.

**CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; HEATHER FONG, in her capacity as Chief of Police for the City and County of San Francisco; KIMBERLY REYNOLDS and KATHERINE HOLDER, individually and in their capacities as a police officers for the City and County of San Francisco,**

Defendants – Appellees.

On Appeal from the United States District Court
For the Northern District Court
No. 3:09-cv-03889-CRB
Honorable Charles Breyer, Judge

---

### APPELLANT'S REPLY BRIEF

---

**JOHN L. BURRIS, Esq./ State Bar #69888**
**BENJAMIN NISENBAUM, Esq./State Bar #222173**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Fax:  (510) 839-3882

Attorneys for Plaintiff-Appellant

*Table of Contents*

Table of Contents.................................................................................................1

Table of Authorities.............................................................................................2

INTRODUCTION ................................................................................................4

ARGUMENT.........................................................................................................6

  A.  THE DEFENDANT OFFICERS' ENTRY INTO SHEEHAN'S HOME
  WAS UNLAWFUL AND NOT SUBJECT TO THE EMERGENCY AID
  EXCEPTION..................................................................................................6

  B.  THE DEFENDANT OFFICERS' UNREASONABLY USED
  EXCESSIVE FORCE ...................................................................................13

  C.  DEFENDANT CITY IS LIABLE PURSUANT TO MONELL ...............20

  D.  THE DEFENDANT OFFICERS VIOLATED THE AMERICANS WITH
  DISABILITIES ACT BY FAILING TO CONSIDER SHEEHAN'S MENTAL
  DISABILITY IN RENDERING HER SERVICES..........................................22

  E.  THE DEFENDANT OFFICERS ARE NOT IMMUNE FROM STATE
  LAW LIABILITY ..........................................................................................23

CONCLUSION .....................................................................................................24

## *Table of Authorities*

## Cases

*Baker v. McCollan,* 443 U.S. 137 (1979) ...............................................23

*Blanford v. Sacramento County.*, 406 F.3d 1110 (9th Cir. 2005) ..........................16

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)...................................... 12, 20

*Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003).6, 18

*Espinosa v. City and County of San Francisco*, 598 F.3d 528 (9th Cir. 2010) .........7

*Fisher v. City of San Jose*, 558 F.3d 1069 (9th Cir. 2009) .....................................11

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992). ...............................................21

*Glenn v. Washington County*, --F.3d--, 2011 WL 6760348 (9th Cir. 2011) 8, 10, 18, 19

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................................18

*Gregory v. County of Maui*, 523 F.3d 1103 (9th Cir. 2008)...................................16

*Kim v. Santa Clara*, 448 Fed.Appx. 780 (9th Cir. 2011).......................................19

*Kohl v. Smythe,* 25 F.Supp.2d 1124 (D.Haw. 1998)...............................................23

*Monell v. Department of Social Services,* 436 U.S. 658 (1978).............................20

*Payton v. New York*, 445 U.S. 573 (1980).................................................................7

*Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)...........7

*Sankovich v. Life Ins. Co. of N. Am.* 638 F.2d 136 (9th Cir. 1981) ..........................14

*Schreiner v. City of Gresham*, 681 F.Supp.2d 1270 (D. Or. 2010) ........................23

*Toguchi v. Chung,* 391 F.3d 1051 (9th Cir. 2004)..................................................23

*United States v. Cervantes*, 219 F.3d 882 (9th Cir. 2000)..................................7, 11

**Statutes**

Cal. Penal Code section 196 ........................................................................24

Cal. Penal Code section 835a.......................................................................24

*INTRODUCTION*

The Defendant Officers, REYNOLDS and HOLDER, violated Plaintiff SHEEHAN'S Fourth Amendment rights upon their hasty and brazen second entry into her residence, thereby needlessly and unreasonably creating a situation in which they subjected her to deadly force. The central issue in this appeal is whether these Defendant Officers failed to take Plaintiff's mental illness into account when affecting her arrest. Plaintiff urges that, either by their lack of training or by them ignoring their training for properly dealing with persons with diminished capacity (an act for which they were never admonished or disciplined by Defendant CITY despite its disastrous consequences), these Defendant Officers violated Plaintiff's constitutional right and almost killed her. At the time of the Defendant Officers' second entry into SHEEHAN'S home, she had requested that they leave her alone and she closed her door creating a barrier between her and the officers, effectively ending any imminent confrontation and danger posed to them. Moreover, at the time of the defendants' second entry, REYNOLDS and HOLDER had confirmed that SHEEHAN, who suffers from schizo-affective disorder, was alone in her residence, not then threatening physical danger to innocents or to herself, and was in need of help—not a violent confrontation. The district court impermissibly made credibility and factual determinations in granting summary

judgment as to all of SHEEHAN'S claims, and this Court should vacate the district court's decision.

In their Answering Brief, the Defendants resort to an alarmist and hyper-sensitive rendition of the subject-incident and, even further, delve into flights of fantasy of what could have transpired to justify the officers' unconstitutional conduct.  In short, SHEEHAN refutes that the emergent situation that the Defendant Officers describe, i.e. that of SHEEHAN charging them with a knife while screaming that she will kill them, actually occurred.  Moreover, what did occur was provoked by the Defendant Officers and spawned from their failure to render appropriate assistance to SHEEHAN, an obviously mentally impaired individual, as they were legally obligated to do.  By forcibly re-entering her residence with guns drawn to blaze, the Defendant Officers could only hope to exacerbate the situation and further contribute to SHEEHAN'S very apparent mental deterioration, culminating in this wrongful shooting.

*ARGUMENT*

## A. THE DEFENDANT OFFICERS' ENTRY INTO SHEEHAN'S HOME WAS UNLAWFUL AND NOT SUBJECT TO THE EMERGENCY AID EXCEPTION[1]

The Fourth Amendment prohibits police officers from making a warrantless entry into a person's home, unless the officers have probable cause and are presented with exigent circumstances. *Payton v. New York*, 445 U.S. 573, 590

---

[1] The Defendant Officers argue that Plaintiff conceded that REYNOLDS and HOLDER lawfully sought to assist Hodge effect a §5150 hold on SHEEHAN, including the initial door opening, below. They further argue that Plaintiff cannot now argue on appeal that the Defendant Officers' initial entry lacked legal justification. (Appellees' Answering Brief "AAB" 14-15.) Plaintiff SHEEHAN understands that this Court reviews the district court's determinations regarding summary judgment de novo. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1054 (9th Cir. 2003). As such, in her Opening Brief, Plaintiff iterated for this Court every argument she lodged to the district court.

To clarify Plaintiff's position, Plaintiff argued to the district court and now on appeal, that any warrantless entry into the home under these circumstances is unlawful thereby vitiating the propriety of the Defendant Officers' entry into Plaintiff's residence. There was no underlying exigency as: all of the reasons for the §5150 hold were slow deteriorations that did not present an imminent danger; Hodge was safe; and the Conard House was cleared of all other residents and personnel, such that no other innocents were in imminent danger either.

However, recognizing that certain narrow exceptions, e.g. emergency aid and exigent circumstances, exist; for purposes of argument, Plaintiff concedes that if the emergency aid exception applies to these circumstances, then those ends were achieved through the Defendant Officers' initial entry into SHEEHAN'S residence. The second entry was not necessary or justified and could only exacerbate the situation.

Appellant's Reply Brief (11-16401)

(1980). The emergency-aid exception stems from the police officers' "community caretaking function" and allows them "to respond to emergency situations" that threaten life or limb; this exception does "not [derive from] police officers' function as criminal investigators." *United States v. Cervantes*, 219 F.3d 882, 889 (9th Cir. 2000).

The district court opined that the emergency aid exception was applicable here, finding that the Defendant Officers "had an objectively reasonable basis [i.e., Hodge's representations] for believing that [SHEEHAN] needed immediate medical assistance." SHEEHAN maintains that the Defendant Officers had no objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm, and SHEEHAN maintains that the district court failed to construe the facts in a light favorable to her in determining otherwise requiring reversal. Compare, *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 530 (9th Cir. 2010) (affirming a denial of summary judgment on qualified immunity grounds because "there are genuine issues of fact regarding whether the officers violated [the plaintiff's] Fourth Amendment rights [, which] are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions").

The Defendant Officers' argue that Plaintiff's "immediacy" argument is unsound in that it ignores SHEEHAN'S short-term behavior, i.e. that Plaintiff threatened to stab Hodge. (AAB 17-18.) The Defendant Officers overstate this point. SHEEHAN issued a conditional threat, while she was unarmed, that she would stab Hodge if he did not leave her room. Once Hodge left her room, any potential danger was dissipated. Importantly, a significant amount of time elapsed between when SHEEHAN threatened Hodge and when the Defendant Officers decided to use force against her. See *Glenn v. Washington County*, --F.3d--, 2011 WL 6760348 *7-8 (9th Cir. 2011) (noting that at the time the defendant officers decided to shoot an intoxicated, emotionally disturbed and suicidal young man, three minutes into their encounter with him," there was little reason to believe [he] could have done any immediate harm to anyone" because all innocents were cleared of the area and the officers themselves "could have moved farther away at any time, had they wanted to").

The Defendant Officers assert that "long-term behaviors can and do cause deteriorations in mental and physical health that require immediate intervention." (AAB 18.) The platitude notwithstanding, as long as she was inside of her room, SHEEHAN was not an immediate danger to herself because she failed to take her medication for an extended period of time, failed to see a counselor for a few

weeks, and wore the same clothes for several days. All of these factors support the obvious—that she needed help. However, these factors do not support the Defendant Officer's argument that any danger posed to SHEEHAN was imminent. It is axiomatic that these long-term factors would take an even longer amount of time to pose any actual danger to SHEEHAN'S physical well-being. Once REYNOLDS and HOLDER confirmed that SHEEHAN was alone in her room, not actively harming herself, and still not attempting to escape, they essentially confirmed that there was no imminent emergency and were required to act in a way that considered SHEEHAN'S mental infirmity.

The Defendant Officers argue that it was not unreasonable for them to re-enter SHEEHAN'S residence once she closed her door. (AAB 23.) SHEEHAN maintains that the Defendant Officers' argument and the reasoning of the district court on this matter either belie the evidence that SHEEHAN proffered or draws inferences not in favor of SHEEHAN. The Defendant Officers' claim that SHEEHAN could have: further harmed herself (assuming without foundation that she had already harmed herself), hidden her knife, gathered more weapons, suddenly attacked, escaped or evaded arrest, or harmed someone. However, there is no reasonable basis for any of these hypotheticals and conjectures. There is absolutely no evidence or indication that SHEEHAN was actively harming

herself[2]; again, all of the factors that initially prompted Hodge to check on her welfare are slow deteriorations—e.g., indicators of poor hygiene or infrequent bathing and failure to take her medication—that would take a great deal of time to result in actual physical harm to her person. In addition, the evidence does not support the Defendant Officers' argument (and the district court's finding) that SHEEHAN might escape, as she had not left her residence for several days and did not attempt to leave her room (much less the Conard House premises) after Hodge told her she was subject to a § 5150 hold. Moreover, the Defendant Officers knew that SHEEHAN had no reasonable means of escape, being on the second floor of the residence and having heard that the back-up officers with less-lethal alternatives had arrived on the scene. Even if SHEEHAN had hidden her knife

---

[2] In addition, there is no indication in the record that the Defendant Officers were informed that SHEEHAN was suicidal. The district court assumed that SHEEHAN was suicidal, apparently because many mentally deranged people are, and cited this as a factor justifying the Defendant Officers' re-entry into Plaintiff's home, and ultimately warranting their use of force against her. (ER @ 37.) Again, there is no basis for this conclusion in the record. This Court has noted the curious nature of this argument as a factor supporting an officer's use of force, "we are aware of no published cases holding it reasonable to use a *significant* amount of force to try to stop someone from attempting suicide. Indeed, it would be odd to permit officers to use force capable of causing serious injury or death in an effort to prevent the possibility that an individual might attempt to harm only himself. We do not rule out that in some circumstances some force might be warranted to prevent suicide, but in cases like this one the 'solution' could be worse than the problem." *Glenn, supra,* at *6 (emphasis original).

somewhere in her room, she had no means to make it disappear.[3]  The Defendant

Officers cannot benefit from consideration of every possibility that could have

theoretically transpired.  Accord, *Fisher v. City of San Jose*, 558 F.3d 1069, 1080-

81, fn. 8 (9th Cir. 2009) (repudiating reliance on "[t]he mere potential for a

theoretical scenario, especially one that bears no resemblance to the actual

circumstances of the case before us…").  Only reasonable inferences drawn from

what actually occurred can be considered.

     Contrary to the Defendant Officers' suggestion (AAB 23-28), there was also

no exigency present in this situation.  While the Defendant Officers were justified

in investigating Hodge's call for assistance with the § 5150 hold, certainly

REYNOLDS and HOLDER confirmed Hodge's observations upon their initial

entry of SHEEHAN'S residence.  They observed that she was alone, exhibiting

psychiatric symptoms, and was indeed a person with diminished capacity.  As they

were informed by Hodge, SHEEHAN uncharacteristically and inappropriately

threatened Hodge in order to be left alone, and she similarly threatened

REYNOLDS and HOLDER also in order to be left alone.  This is not rational

---

[3] Besides which, the Defendant Officers' justification for the warrantless entries
into SHEEHAN'S room is the emergency aid exception which is based on
rendering assistance not investigation of a crime. *United States v. Cervantes*, 219
F.3d  at 889.

behavior.  The Defendant Officers observed that SHEEHAN was in need of help *not* further provocation and escalation of the situation.

The Defendant Officers claim that Plaintiff merely speculates that "she would not display any aggression so long as she was left alone;" this argument takes SHEEHAN'S argument out of context.  (AAB 21.)  The Defendant Officer's argument that "officers cannot simply leave a mentally ill person alone in a group home to freely attack any innocent person who might disturb her," borders on being absurd and mischaracterizes Plaintiff's argument.  SHEEHAN'S irrational and aggressive response to the Defendant Officers and to Hodge was provoked by their attempts to help her.  Plaintiff has always maintained that SHEEHAN needed help, and she has never argued that her constitutional rights necessitated that the Defendant Officers abandon their duty as law enforcement officers to render her assistance.  However, the Defendant Officers were legally constrained to render SHEEHAN aid that was reasonable under the circumstances and that took her disability into account.  *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001).  Contrary to the Defendant Officers' argument, this case is not merely a quibble about the tactics employed by REYNOLDS and HOLDER.  (AAB 23.) Here, REYNOLDS and HOLDER abandoned their training and basic legal

standards, in failing to factor SHEEHAN'S known and obvious infirmities into

their interaction with her.

## B. THE DEFENDANT OFFICERS' UNREASONABLY USED EXCESSIVE FORCE

### 1. Material Questions of Fact Exist Regarding Whether the Quantum of Force the Defendant Officers employed was Reasonable

Plaintiff urges that the district court viewed the facts in a light not favorable

to SHEEHAN in finding that the quantum of force used the Defendant Officers did

not violate SHEEHAN'S constitutional rights by the using deadly force.  The

Defendant Officers claim that Plaintiff SHEEHAN misunderstands what

constitutes a material fact.  (AAB 25.)  Plaintiff maintains that the district court

impermissibly resolved material factual disputes against her regarding

circumstances that were outcome determinative, as follows.

#### a. *There is a Material Question of Fact Whether the Defendant Officers' use of Pepper Spray was Effective*

Most significantly, the Defendant Officers argue mightily that there is no

evidence that SHEEHAN staggered across the door threshold just prior to the

Defendant Officers shooting her.  (AAB 26.)  At the outset, Plaintiff uses the word

"staggered" as a characterization of her testimony.  In fact, SHEEHAN testified

that, upon REYNOLDS and HOLDER'S second entry to her room, she was yelling

that the officers had no right to be in her room, and that as she stepped on the

threshold of her door with the knife in her hand, that the Defendant Officers pepper

sprayed her in her face.  From there, SHEEHAN yelled to the Defendant Officers,

"[y]ou're blinding me, you're blinding me. I can't see. And then I started to – I

started to fall. And they right away were shooting me….And then I fell against the

wall in the corridor" and "I slided [sic] down the wall into a down position."  (ER

@ 150, 156.)  Curiously, the Defendant Officers ignore the most salient point of

this discourse which reveals that these facts are materially disputed.  REYNOLDS

and HOLDER claim that the pepper spray had no effect on SHEEHAN and that in

response to the pepper spray she continued to step across the door threshold toward

them.  Whereas, SHEEHAN testified that she was definitely impacted by the

pepper spray.  Indeed, SHEEHAN was blinded by the pepper spray, she informed

the Defendant Officers that she was blinded, and she began falling and coming out

of the door due to her blindness, and that as she raised her other arm (that did not

contain a knife) shots rang out.  (ER @ 150.) [4]

     Despite Defendants' arguments otherwise, whether SHEEHAN was affected

by the pepper spray is a material question of fact.  Similarly, whether SHEEHAN

_____

[4] Plaintiff and Defendants cite the same portion of SHEEHAN'S testimony and
therefrom draw varying inferences.  This Court has long held that summary
judgment should not be granted where there are undisputed facts which reasonably
lend themselves to varying inferences.  *Sankovich v. Life Ins. Co. of N. Am.* 638
F.2d 136, 140 (9th Cir. 1981).

continued to walk upright in a menacing and threatening manner toward REYNOLDS and HOLDER, or whether she staggered a bit as she fell against and slid down a wall while blinded and writhing is also a material question of fact. Indeed, determination of these questions is central to the determination of whether the quantum of force the Defendant Officers used against SHEEHAN was warranted. Plaintiff maintains that if SHEEHAN was impacted by the pepper spray—i.e., blinded—and then fell to the ground, as she testified, then this is the version of the incident that the district court should have credited[5], and there was no legal justification for the Defendant Officers' use of deadly force against SHEEHAN as the less intrusive means—use of the pepper spray—had already proven effective.

### b. There is a Material Question of Fact Whether SHEEHAN'S possession of the Knife Justified the Defendant Officers' Quantum of Force

The Defendant Officers also claim that Plaintiff's argument regarding the manner in which SHEEHAN held the knife is a question of fact is that is ultimately

---

[5] As Defendants note (AAB 26), the district court claims that to have accepted SHEEHAN'S version of these facts as true (ER @ 7 fn. 5); however, the district court determined that SHEEHAN continued to advance after she was pepper sprayed. Based on SHEEHAN'S testimony that she was falling forward, Plaintiff urges that, viewing the facts in the light favorable to SHEEHAN, she did not advance in a deliberate manner. She fell forward.

immaterial.  The Defendant Officers argue that that SHEEHAN was holding a knife, at all, is dispositive and warrants the quantum of force that they used against her.  (AAB 27.)  Again, the Defendant Officers are mistaken as they champion their overwrought view of the subject-incident.  This Court has recently found that while possession of a knife is an important consideration in evaluating the strength of the government's interest in the force used, it is not dispositive.  "Rather, courts must consider 'the totality of the facts and circumstances in the particular case'; otherwise, that a person was armed would always end the inquiry."  *Glenn*, at *6 (citing *Blanford v. Sacramento County.*, 406 F.3d 1110, 1115 (9th Cir. 2005). Moreover, this Court has made clear that the manner in which a suspect holds a weapon—even an innately innocuous object—can factor into the calculus of the totality of the circumstances.  *Gregory v. County of Maui*, 523 F.3d 1103, 1106-07 (9th Cir. 2008) (noting the manner in which the suspect pointed a pen, as if brandishing a knife, justified the officers decision to use some degree of force). Here, there is a material question of fact as to how SHEEHAN was holding the knife and whether at the time the Defendant Officers shot her she pointing it as if on the attack.

**2. There is a Material Question of Fact Whether SHEEHAN'S Testimony is Appropriately Considered in Determination of the Reasonableness of the Defendant Officers' Conduct**

Plaintiff urges that the district court made impermissible credibility determinations by selectively crediting Plaintiff SHEEHAN'S testimony in some instances and making findings that were not in her favor even in other instances. The Defendant Officers respond that SHEEHAN has waived the argument that Plaintiff's testimony is not credible.  (AAB 28.)  This claim, in addition to being absolutely untrue, is perplexing and mischaracterizes SHEEHAN'S argument on this point.  Plaintiff SHEEHAN suffers from a very serious and chronic mental illness that impacts her ability to interact with people or perceive events and obviously to react rationally.  SHEEHAN has been forth coming about her infirmity throughout this litigation.  SHEEHAN argued emphatically to the district court on summary judgment, that the inherent inconsistencies in her testimony cast suspicion over all of it.[6]  For example, Plaintiff seemed to vividly recall her subjective feelings of being violated and victimized by Hodge and the Defendant Officers and how all of her actions were in response to these paranoid delusions; however, she did not recall that the Defendant Officers shot her in the head. Plainly stated, there is something wrong with this.  SHEEHAN'S testimony calls

---

[6] The district court did not address Plaintiff's argument on this issue, so Plaintiff assumes that the district court ruled against her on this matter.

into question the validity of at least some of her testimony and creates a credibility question of whether she: 1) was fully cognizant of what she was doing during the subject-incident, and 2) understood (in an appreciable way) what she was saying at the deposition. Plaintiff lodged these same points to the district court on summary judgment and now on appeal, as this Court reviews this case de novo. *Drummond, supra*, 343 F.3d at 1054.

The Defendant Officers claim that Plaintiff's reference to subjective portions of her testimony is immaterial. (AAB 25 fn. 12.) As discussed above, Plaintiff references her testimony regarding her subjective feelings during the subject-incident to provide context into her testimony as a whole which cannot be ignored or selectively credited as the district court did. SHEEHAN initially argued, on summary judgment, that her testimony regarding her intentions toward the Defendant Officers was not relevant to the determination of the reasonableness of their actions, because they did not know what was in her mind. The Defendant Officers rudely remark that notwithstanding they correctly read SHEEHAN'S mind. (AAB 25, fn. 12.) Consideration of SHEEHAN'S testimony in this manner is absolutely improper. *Glenn, supra*, at *7, fn. 8 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)) ("[w]e cannot consider evidence of which the officers were

unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways.")

The Defendants citation to *Kim v. Santa Clara*, 448 Fed.Appx. 780 (9th Cir. 2011) is distinguished.  In *Kim*, the suspect stabbed two people and a K-9 Officer, actively resisted seizure by jumping through windows, and barricaded himself in a room in a stranger's home.  *Id*. at 782.  Clearly, the police were not required to wait to take him into custody as the situation was emergent.  Of course here, SHEEHAN had neither stabbed anyone, nor fled capture, nor indiscriminately subjected the public to extremely violent and erratic behavior.  SHEEHAN was confined to her room and she gave no indication that she would leave her room anytime soon.  Moreover, she only issued conditional threats to people with authority and ability to access her room.

Contrary to the Defendant Officers argument, and that of the district court, SHEEHAN was not an unbridled wildcard that presented far-fetched unknown behaviors necessitating that they seize her immediately.  (AAB 32-33, ER @ 37-39.)  Delayed action in this situation was legally required and dictated by the Defendant CITY'S training documents.  *Glenn, supra*, at *9 (applying the defendant County's own use-of-force protocols to the defendant officers' actions).  Police practice industry standards, including those that Defendant CITY utilizes to

train its officers, proscribe provisions for officer encounters with emotionally

disturbed persons or persons with diminished capacity which include, "requesting

back-up, calming the situation, communicat[ing]…take time to assess the

situation…give person time to calm down…do not threaten the individual with

arrest or in any other manner…threats may create additional fright, stress or

potential aggression..."  (ER @ 96; see generally, ER @ 89-109.)  The Defendant

Officers did not do this here.  See *Glenn v. Washington County*, at *10 (finding

that attempting "tactics of persuasion or questioning" and "using time as a tool"

examples of less intrusive options available to officers dealing with known persons

with diminished capacity) (internal citations omitted).  Qualified immunity is not

available here, because the legal precedent for dealing with known suspects with

diminished capacity was well settled and long established at the time of the

subject-incident.  *Deorle, at* 1281.

## C. DEFENDANT CITY IS LIABLE PURSUANT TO MONELL

Plaintiff SHEEHAN also appeal the dismissal of her claim against

Defendant CITY pursuant to *Monell v. Department of Social Services,* 436 U.S.

658 (1978).  Pursuant to 42 U.S.C. section 1983, a local government may be liable

for constitutional torts committed by its officials according to municipal policy,

practice, or custom.  *Monell*, 436 U.S. at 690-91.  Alternatively, "the plaintiff may

prove that an official with final policy-making authority ratified a subordinate's

unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  The Defendant Officers argue that SHEEHAN cannot maintain a claim of ratification because there is no evidence of deliberate indifference or maintain a claim of tacit endorsement because there is no evidence that a policy making approved the officer's decisions.  (AAB 34-35.)  Defendants are mistaken.  To be clear, Plaintiff maintains that Defendant CITY'S training, based on the materials produced during discovery, regarding its officers' response to persons with diminished capacity *purports* to comply with police practices industry standards.  However, there is a material question of fact regarding whether this training actually takes place or how effective it is because neither REYNOLDS nor HOLDER could testify to Defendant CITY'S policy of "non-escalation" in these type situations, and the Defendant Officers certainly did not comport themselves consistent with Defendant CITY'S so-called training.

Importantly, Defendant CITY'S failure to punish or admonish the Defendant Officers' actions in this matter supports both of Plaintiff's arguments that the Defendant CITY failed to adequately train its officers and that it tacitly endorsed the Officers' violative behavior.  In their argument, the Defendant Officers appear to misunderstand the definition of tacit endorsement—which means implied and/or understood without being openly expressed.  REYNOLDS and HOLDER'S

testimony reveal that they were not at all familiar with Defendant CITY'S policy and protocols for handling persons with diminished capacity. In addition, their actions reveal that they did not even attempt to comport their behavior with department protocols. Even though the Defendant Officers' failures had terrible and dire results, the Defendant CITY chose not to admonish them. Assuming arguendo, that the Defendant Officers' conduct was a mistake, Defendant CITY has not acknowledged that their officers made a mistake here. This failure to admonish the Defendant Officers effectively rubber-stamped their unconstitutional and violative behavior in a manner that is not openly expressed. Moreover, the Defendant CITY'S lack of reaction calls their training on this matter into question.

## D. THE DEFENDANT OFFICERS VIOLATED THE AMERICANS WITH DISABILITIES ACT BY FAILING TO CONSIDER SHEEHAN'S MENTAL DISABILITY IN RENDERING HER SERVICES

The Defendant Officers argue that the Americans with Disabilities Act, requires more than unreasonable conduct but rather deliberate indifference, and is not well-suited to police decisions during dangerous assaults. (AAB 35-37.) Again, SHEEHAN does not restate her entire argument regarding the Defendant Officers' violation of the ADA here, except to point out that the Defendant Officers, and the district court, base their argument on the factual position that the situation was not "under control" during SHEEHAN'S "momentary retreat" and

that the situation was not under control until SHEEHAN was in police custody.

(AAB 37.)  Plaintiff disagrees.  When SHEEHAN closed her door on REYNOLDS

and HOLDER, the Defendant Officers observed that no innocents were in harm's

way and knew that the only physical harm that SHEEHAN was subjecting her to

were slow deteriorations that would take a great deal of time to amount to

imminent harm.  Therefore, the Defendant Officers had time to consider

SHEEHAN'S mental infirmity and to make provisions for her commensurate with

her disability and needs and in conformity with Defendant CITY protocols to

deescalate and slow down such encounters.  *Schreiner v. City of Gresham*, 681

F.Supp.2d 1270, 1273 (D. Or. 2010).

### E.  THE DEFENDANT OFFICERS ARE NOT IMMUNE FROM STATE LAW LIABILITY

The Defendant Officers claim that SHEEHAN has no viable state law

claims, particularly negligence.  (AAB 38-41.)  "Section 1983 imposes liability for

violations of right protected by the Constitution, not for duties of care arising out

of tort law.  Remedy for the latter type of injury must be sought in state court under

traditional tort-law principles."  *Baker v. McCollan,* 443 U.S. 137, 146 (1979);

*Kohl v. Smythe,* 25 F.Supp.2d 1124, 1128 (D.Haw. 1998); *see also, Toguchi v.*

*Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004) ("Liability for negligently inflicted

harm is categorically beneath the threshold of constitutional due process").

Plaintiff maintains that at the very least REYNOLDS and HOLDER utilized flawed or erroneous tactics in failing to meet their duty of care owed SHEEHAN. Moreover, contrary to the Defendant Officers' argument, REYNOLDS and HOLDER'S use of force was decidedly unreasonable and they are liable for the injuries they inflicted on the Plaintiff.  Cal. Penal Code sections 196 and 835a.

### *CONCLUSION*

The tragic events underlying this case, demonstrate how law enforcement agencies are expected and entrusted by the public to make (and be trained to make) reasonable decisions when handling the special needs of our mentally disabled citizens.  Defendants REYNOLDS and HOLDER failed in their duty and in the process violated SHEEHAN'S Fourth Amendment right to be free from unreasonable searches and seizures for which they are not entitled to qualified immunity, failed to accommodate SHEEHAN'S disability in violation of the Americans with Disabilities Act, and similarly violated the her state law rights; in addition, Defendant CITY tacitly endorsed the Defendant Officers actions by failing to admonish them for their violations of CITY protocols or even acknowledge that the Officers made a mistake in the handling of SHEEHAN.  In essence, once the Defendant Officers observed that no innocents were being harmed in SHEEHAN'S room, the circumstances dictated that they were legally constrained from entering again.  Indeed, based on the information the Defendant

Officers had and their own observations of SHEEHAN'S behavior, the Defendant Officers could only hope to further escalate and exacerbate the situation by entering her room the second time.

The district court's determination the Defendant Officers actions did not violate the Constitution and granting summary judgment in favor of the Defendants as to all of Plaintiff's claims was not based on the requisite deference due SHEEHAN'S version of the subject-incident.  The facts as presented by SHEEHAN: are a true and compelling account of complete Fourth Amendment violations by the Defendant Officers; indicate a total failure by the Defendant Officers to rationally consider the circumstances leading to the shooting and the shooting itself; and warrant an outright repudiation of the Defendant Officers' actions because everyone, even those as misfortunate as SHEEHAN, has the right to be treated—particularly in their own homes—reasonably and in accordance with their known psychiatric afflictions by police.  The contrary position advocated by the Defendant Officers and wrongly accepted by the district court cannot stand when the law, and basic human decency, requires police officers to take into account a subject's mental impairment.  As such, SHEEHAN strongly urges this Court that the district court's determination that the Defendant Officers' actions

did not violate the Constitution and granting summary judgment in favor of the

Defendants as to all of Plaintiff's claims warrants reversal.


Dated:  March 6, 2012          **LAW OFFICES OF JOHN L. BURRIS**


                               /s/ Benjamin Nisenbaum
                               Benjamin Nisenbaum, Esq.
                               Attorney for Plaintiff TERESA SHEEHAN

## CERTIFICATE OF COMPLIANCE WITH

## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

Pursuant to Federal Rules of Appellate Procedure, Rule 32(a), and Ninth Circuit Rule 32, Counsel for Appellant TERESA SHEEHAN hereby certifies that this brief contains 5,336 words, excluding the parts of the brief exempted by F.R.A.P. 32(a).  This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Version 10.0, in 14-point Times New Roman font.

Dated:  March 6, 2012                **LAW OFFICES OF JOHN L. BURRIS**

                                     *s/ BenjaminNisenbaum*
                                     Benjamin Nisenbaum, Esq.
                                     Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 6, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ Arlene Branch
Arlene Branch